IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

COLUMBIA RIVERKEEPER,

      Plaintiff,

                                  3:13-CV-1494-PK

                                  OPINION AND

v.                               ORDER

U.S. ARMY CORPS OF ENGINEERS,

      Defendant.

_____

PAPAK, Magistrate Judge:

      Plaintiff Columbia Riverkeeper ("CRK") filed this action against defendant the United

States Army Corps of Engineers (the "Corps") and Lt. Gen. Thomas P. Bostick on August 26,

2013.  On September 26, 2013, CRK amended its complaint to state a claim under the Freedom

of Information Act ("FOIA") against the Corps only.  By and through its FOIA claim, CRK

challenges the Corps' decision to withhold purportedly exempt materials otherwise responsive to

CRK's FOIA request for documents relating to the Corps' environmental review in connection

with the Morrow Pacific Project.  This court has jurisdiction over CRK's action pursuant to 5

U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

      Now before the court is the Corps' motion (#14) for protective order, by and through

Page 1 - OPINION AND ORDER

which the Corps seeks to compel CRK to return and/or destroy a document inadvertently

produced to CRK in discovery, and to prohibit CRK from use or disclosure of that same

document. I have considered the Corps' motion, and all of the pleadings and papers on file. For

the reasons set forth below, the Corps' motion is granted, and CRK is ordered to return and/or

destroy all copies in its possession of the subject document, and to refrain from any use or

disclosure thereof (except as indicated below).

## MATERIAL BACKGROUND

On November 2, 2012, CRK submitted a request to the Corps' Portland District office

under the Freedom of Information Act, seeking documents related to its environmental review of

the Morrow Pacific Project, and to other agency decisions related to that review. On March 18,

2013, CRK administratively appealed the Corps' failure to provide all documents responsive to

that request, and on March 22, 2013, the Corps produced all responsive documents other than

those in connection with which it claimed an exemption from its production obligation. In so

doing, the Corps either withheld from production or redacted 91 responsive documents on the

basis of claimed exemption. CRK administratively appealed the Corps' decision to withhold or

redact those documents on May 16, 2013, and filed this action to review the Corps' compliance

with the initial FOIA request on August 26, 2013.

The parties agree that judicial review of FOIA compliance is generally decided on

summary judgment, and that it is customary in preparing summary judgment for a government

agency to prepare and produce a so-called "*Vaughn* index," *see Vaughn v. Rosen*, 484 F.2d 820,

826-828 (D.C. Cir. 1973), identifying the documents redacted or withheld from production, the

applicable exemptions claimed by the agency, and the grounds for claiming each such exemption

Page 2 - OPINION AND ORDER

in connection with each redacted or withheld document. In this case the parties agreed, in light of the projected timing of the Corps' contemplated decisions in connection with the Morrow Pacific Project, to a relatively expedited briefing schedule. In particular, the parties agreed in or around early November 2013 that the Corps would provide CRK with its *Vaughn* index in advance of filing a summary judgment motion, to the end of narrowing the scope of the parties' dispute.

On December 2, 2013, following a partial review and analysis of the redacted and withheld documents, the Corps produced additional, previously withheld documents to CRK. Subsequently, on January 10, 2014, the Corps produced to CRK a near-complete draft *Vaughn* index for its review. After completing its review and analysis of the redacted and withheld documents, on January 29, 2014, the Corps produced to CRK an electronic file it represented to be an "updated" *Vaughn* index, together with a CD of redacted documents Bates-stamped to correspond with the identifying Bates numbers listed in the index. The file was a set of Microsoft Excel spreadsheets that included both the Corps' updated *Vaughn* index and additional spreadsheets constituting the work product of Corps attorney Misty Latcu, who conducted the Corps' review and analysis of the disputed documents, specifically including her mental impressions of the grounds for asserting the exemptions purportedly applicable to each withheld or redacted document.

According to the undisputed declarations of Latcu and Assistant United States Attorney Kevin Danielson, upon completion of her review and analysis of the indexed documents, Latcu created a version of the file that lacked the spreadsheets containing her mental impressions, then saved both the "trimmed" version of the file and the version that contained her work product and

Page 3 - OPINION AND ORDER

mental impressions. Immediately thereafter, she inadvertently forwarded the "untrimmed" version to Daniels via email, representing to him that it was ready for distribution to CRK, and believing erroneously that she had attached the "trimmed" version to her message. Danielson then forwarded the attached file to counsel for CRK, without first opening, reviewing, or analyzing it, indicating that "Agency counsel said there were not many changes from the [version produced on January 10, 2014], but [that he] ha[d] not compared the two [versions]." It is undisputed that neither the electronic file nor any spreadsheet element thereof was marked as confidential, and that the file was a "live" Excel document to which any user thereof could make changes and effect manipulations.

Over the course of the following days, counsel for CRK conducted a review of the produced file, and became suspicious that the additional spreadsheets containing Latcu's mental impressions had been inadvertently produced. On February 3, 2014, counsel for CRK notified Danielson that the additional spreadsheets had been included in the Corps' production of the index. Later that same day, Danielson represented to CRK's counsel that the file was protected "under the attorney-client privilege, as work product, and as trial preparation material." Danielson additionally asked CRK's counsel to "destroy" the file and, in the event CRK intended to contest that request, to "sequester" the file until such time as this court decided the issue. Danielson simultaneously provided the Corps' *Vaughn* index with the additional spreadsheets containing Latcu's mental impressions removed, representing that it was the version CRK had originally been "intended to receive."

Page 4 - OPINION AND ORDER

# ANALYSIS

The work-product doctrine is codified at Federal Civil Procedure Rule 26(b)(3).[1]

According to the provisions of Rule 26(b)(3), "a party may not [ordinarily] discover documents

and tangible things that are prepared in anticipation of litigation or for trial by or for another

party or its representative (including the other party's attorney, consultant, surety, indemnitor,

insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).  To the contrary, such tangible attorney work

product is discoverable only if relevant to a claim or defense asserted by one of the parties to an

action and if the propounding party is able to show that "it has substantial need for the materials

to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by

other means." *Id.*  Moreover, even where such tangible attorney work product may be otherwise

discoverable, the courts must nevertheless "protect against disclosure of the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning

the litigation," Fed. R. Civ. P. 26(b)(3)(B), except where such "mental impressions are at issue in

a case and the need for the material is compelling," *see Holmgren v. State Farm Mut. Auto. Ins.

Co.*, 976 F.2d 573, 577 (9th Cir. 1992).  "The burden of establishing protection of materials as

work product is on the proponent, and it must be specifically raised and demonstrated rather than

asserted in a blanket fashion."  *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005), *quoting

Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002).

"The privilege derived from the work-product doctrine is not absolute.  Like other

---

[1] The work-product doctrine functions as a "procedural immunity" rather than as a
substantive evidentiary privilege. *See, e.g., Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053
(8th Cir. 2000); *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir.
1998).  As such, application of work-product immunity before this court is governed by federal
rather than by state law.

qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975).

Disclosure of work product to a party-opponent generally constitutes waiver of work-product

immunity. *See* Fed. R. Evid. 502(a); *see also, e.g., Bittaker v. Woodford*, 331 F.3d 715, 719 (9th

Cir. 2003). However:

> When made in a federal proceeding or to a federal office or agency, the disclosure
> does not operate as a waiver in a federal or state proceeding if:
>
> (1)    the disclosure is inadvertent;
>
> (2)    the holder of the privilege or protection took reasonable steps to
>        prevent disclosure; and
>
> (3)    the holder promptly took reasonable steps to rectify the error,
>        including (if applicable) following Federal Rule of Civil Procedure
>        26 (b)(5)(B).

Fed. R. Evid. 502(b). In the event of inadvertent production of protected materials in discovery

that does not constitute waiver of the applicable protections, the inadvertent producing party is

entitled to request (as the Corps has done here) destruction, return, or sequestration of the

inadvertently produced materials:

> If information produced in discovery is subject to a claim of privilege or of
> protection as trial-preparation material, the party making the claim may notify any
> party that received the information of the claim and the basis for it. After being
> notified, a party must promptly return, sequester, or destroy the specified
> information and any copies it has; must not use or disclose the information until
> the claim is resolved; must take reasonable steps to retrieve the information if the
> party disclosed it before being notified; and may promptly present the information
> to the court under seal for a determination of the claim. The producing party must
> preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

The first matter for the court's determination, therefore, is whether Latcu's inadvertently

produced Excel file constitutes protected work product immune from discovery under Rule

26(b)(3). CRK contends that the information inadvertently produced by the Corps in connection with its production of the updated *Vaughn* index cannot be deemed protected work product, because by its terms work-product immunity extends only to documents and tangible things rather than to facts set forth within such materials, and because the mental impressions and facts at issue here are not contained within a discrete document but rather within a document that the Corps intended to produce. I find CRK's reasoning inapposite. The Corps does not seek destruction or return of inadvertently produced facts selected from among the contents of the electronic file it produced on January 29, 2014, but rather destruction or return of the entire file. As noted above, it is the Corps' position that its production of the file in its entirety was inadvertent, and that it intended instead to produce a different file containing the same *Vaughn* index but not containing any of the mental impressions in connection with which it now asserts work-product immunity.

Moreover, analysis of the spreadsheets at issue establishes that they were prepared in connection with this litigation and contain mental impressions of the Corps' counsel. As such, I agree with the Corps that the electronic file it produced to CRK on January 29, 2014, constitutes protectible attorney work product.

The next question for determination is whether the Corps' production of the file constituted waiver of applicable work-product protections. CRK does not dispute the Corps' position, which is supported by the evidentiary record, that its production was inadvertent and that the Corps promptly took reasonable steps to rectify its error, expressly invoking Rule 26(b)(5)(B). CRK does, however, vigorously dispute whether the Corps can establish that it took reasonable steps to prevent disclosure," the remaining element of the three-part test for non-

waiver following inadvertent disclosure under Rule 502(b).

In support of its position, CRK notes, correctly, that Danielson himself took no steps whatsoever to protect the subject work product from disclosure. In particular, CRK notes that Danielson conducted no review of the produced file and failed to convert the "live" Excel document into a .pdf file to which users would be unable to make changes or effect manipulations prior to forwarding it to CRK's counsel. In addition, CRK directs the court's attention to previous instances in which Danielson produced protected documents inadvertently under circumstances suggesting his failure to take reasonable steps to safeguard against such production.

I decline to consider CRK's evidence and argument regarding Danielson's purported past carelessness in connection with the production of protected materials. Assuming Danielson to have displayed such carelessness in the past, such evidence and argument is not probative as to whether his conduct in connection with the production of January 29, 2014, was reasonable in this instance.

Moreover, although I agree with CRK that conversion of electronic discovery materials into .pdf format prior to their production is both prudent and calculated to safeguard against the inadvertent disclosure of some classes of information, including in particular (but not solely) so-called "meta-data" that may be generated in the creation of many types of electronic documents, I do not take the Corps' failure to do so in this instance to be dispositive of the reasonableness inquiry. I note that conversion into .pdf format would not have prevented the inadvertent disclosure at issue here, because the inadvertently disclosed mental impressions were set forth on the face of document, and would have been present and legible following conversion of the

spreadsheets at issue.

Perhaps more troubling is Danielson's failure to review the file he received from Latcu before passing it on to CRK's counsel. But for Danielson's failure to perform even a cursory review of the document, the inadvertent disclosure likely would not have occurred. However, at the time he forwarded the file to CRK's counsel, Danielson was aware that Corps attorney Latcu had extensively reviewed and analyzed the *Vaughn* index, and it was not clearly unreasonable for him to take her at her word that the electronic file she sent him was the one intended for production to CRK. This is true in particular given that Danielson had received Latcu's assurance that the version of the file she sent him was very little different from the version he had previously reviewed.

In addition, it is undisputed that Latcu took steps which, if carried out without error, would have been sufficient to prevent the inadvertent disclosure of her protected mental impressions: she carefully removed all such information from the file she had been working on, and saved the resulting work product as a new file. The fact that she then inadvertently sent the "untrimmed" file to Danielson does not render the steps she took and intended to take unreasonable, or uncalculated to safeguard against the kind of inadvertent disclosure at issue here; indeed, Rule 502(b) is intended to prevent just such error in the implementation of otherwise reasonable safeguards from effecting waiver of work-product immunity. *See* Fed. R. Evid. 502(b).

Under all of the circumstances, I find that under Rule 502(b) the Corps did not waive work-product immunity in the file it produced to CRK on January 29, 2014. In consequence, the Corps' Rule 26(b)(5)(B) motion is granted.

## CONCLUSION

For the reasons set forth above, the Corps' Rule 26(b)(5)(B) motion (#14) is granted, CRK is ordered to return or destroy all copies in its possession or control of the electronic file produced to it by the Corps on January 29, 2014, and CRK is further ordered to refrain from any use or disclosure of any of the information contained therein, except to the extent that such information is contained in the Corps' production of February 3, 2014.

Dated this 19th day of March, 2014.

Honorable Paul Papak
United States Magistrate Judge

Page 10 - OPINION AND ORDER