IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

COLUMBIA RIVERKEEPER,

     Plaintiff,

                                   3:13-CV-1494-PK

                                   OPINION AND
v.                                   ORDER

U.S. ARMY CORPS OF ENGINEERS,

     Defendant.

PAPAK, Magistrate Judge:

     Plaintiff Columbia Riverkeeper ("CRK") filed this action against defendant the United

States Army Corps of Engineers (the "Corps") and Lt. Gen. Thomas P. Bostick on August 26,

2013. On September 26, 2013, CRK amended its complaint to state a claim under the Freedom

of Information Act ("FOIA") against the Corps only. By and through its FOIA claim, CRK

challenges the Corps' decision to withhold purportedly exempt materials otherwise responsive to

CRK's FOIA request for documents relating to the Corps' environmental review in connection

with the Morrow Pacific Project. This court has jurisdiction over CRK's action pursuant to 5

U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

     Now before the court are the Corps' motion (#27) for summary judgment and CRK's

cross-motion (#32) for summary judgment as to CRK's FOIA request. I have considered the parties' motions, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, each motion is granted in part and denied in part as discussed below.

## MATERIAL FACTS

### I.    The Parties

Plaintiff CRK is a non-profit public-interest organization incorporated under the laws of the State of Washington, with its principal place of business in Hood River, Oregon. CRK's stated corporate mission is to restore and protect the Columbia River and the ecosystem it is part of. CRK brings this FOIA action on its own behalf and on behalf of its employees and members.

Defendant the Corps is an agency of the federal Department of Defense. The Corps is in possession and control of the records CRK seeks through this FOIA action.

### II.    The Parties' Dispute[1]

The Morrow Pacific Project is a proposed coal export plan pursuant to which coal would be offloaded from open railcars to river barges at the Port of Morrow in northeastern Oregon, shipped by barge along an approximately 270-mile stretch of the Columbia River from Morrow to the Pacific Ocean, and finally offloaded onto ocean-going vessels for shipment to Asian destinations. If the proposed project is implemented, some 8.8 million tons of coal will be transported in this manner annually. It is contemplated that the project will require significant in-water construction in the Columbia River.

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing cross-motions for summary judgment under Federal Civil Procedure Rule 56.

Page 2 - OPINION AND ORDER

On or around September 18, 2012, the Corps announced that it would prepare an Environmental Assessment ("EA") in connection with its review of the potential adverse impacts of the Morrow Pacific Project on the Columbia River ecosystem, rather than immediately prepare a more rigorous and comprehensive Environmental Impact Statement ("EIS"). On November 2, 2012, CRK submitted a request to the Corps' Portland District office under the Freedom of Information Act, seeking documents related to the Corps' decision to prepare an EA rather than an EIS. On January 18, 2013, the Corps produced documents responsive to CRK's FOIA request, many in partially redacted form, indicating both that additional responsive documents existed and that the Corps might produce some of those additional documents in the following week. Having received no further responsive documents, however, on March 18, 2013, CRK administratively appealed the Corps' failure to produce all responsive documents in its possession and control.

On March 22, 2013, the Corps responded to CRK's administrative appeal by producing additional responsive documents, some in partially redacted form, simultaneously advising CRK that it was withholding from production an additional 91 documents on the basis of FOIA Exemption 5 (*see infra*). On May 16, 2013, CRK filed a second administrative appeal, specifically assigning error to the Corps' decision to withhold 91 responsive documents from production. The Corps declined to update its responsive production, and this action followed on August 26, 2013.

The parties agree that judicial review of FOIA compliance is generally decided on summary judgment, and that it is customary in preparing summary judgment for a government agency FOIA defendant to prepare and produce a so-called "*Vaughn* index," *see Vaughn v. Rosen*, 484 F.2d 820, 826-828 (D.C. Cir. 1973), identifying the documents redacted or withheld

Page 3 - OPINION AND ORDER

from production, the applicable exemptions claimed by the agency, and the grounds for claiming

each such exemption in connection with each redacted or withheld document.  In this case the

parties agreed, in light of the projected timing of the Corps' contemplated decisions in connection

with the Morrow Pacific Project, to a relatively expedited briefing schedule.  In particular, the

parties agreed in or around early November 2013 that the Corps would provide CRK with its

*Vaughn* index in advance of filing a summary judgment motion, to the end of narrowing the

scope of the parties' dispute prior to dispositive litigation.

On December 2, 2013, the Corps produced 3 of the 91 initially withheld documents, as

well as redacted copies of 50 of the remaining 88 documents.  Over the following months, the

Corps provided various draft *Vaughn* indexes to CRK, including the inadvertently produced draft

containing the mental impressions of the Corps attorney who chiefly prepared it which was the

subject of this court's "claw-back" order (#22) of March 19, 2014.  The Corps' apparently final

*Vaughn* index was provided to CRK on February 3, 2014.  Following receipt of the Corps'

*Vaughn* index, CRK agreed to limit the scope of its request for judicial review of the Corps'

compliance with its FOIA request to a total of 341 pages of approximately 55 documents or

collections of documents withheld by the Corps in whole or in part.  The parties agree that their

dispute over those 341 pages is now ripe for summary adjudication.

III.    **The Withheld Documents at Issue**

The documents at issue in the parties' dispute are not a part of the court's record, but a

majority of them[2] have been submitted for *in camera* review.  The parties agree that the disputed

---

[2]  Counsel for the Corps represented to the court that he was submitting a complete set of the disputed documents for *in camera* review, but in fact the Corps' submission did not include the documents bearing *Vaughn* Nos. 18-21, 149-155, 212-218, 307-314, 384-390, 554-557, 603-

Page 4 - OPINION AND ORDER

documents can appropriately be grouped into the following categories: (i) draft communications plans, (ii) draft public communication materials, (iii) draft letters, (iv) draft versions of a never-finalized memorandum, and (v) internal Corps briefing materials.

- The draft communications plans are the 24 documents described at *Vaughn* Nos. 7-11; 18-21; 45-52; 75-79; 116-120; 149-155; 191-200; 201-210; 212-218; 219-220; 274-280; 307-314; 375-382; 384-390; 501-513; 537-538; 543-553; 553-557; 561-574; 576-583; 585-592; 603-610; 612-619; and 621-626.  All of these documents other than the document described at *Vaughn* Nos. 501-513 are preliminary drafts of a final plan that was released to CRK as part of the Corps' production of September 18, 2012, whereas the document at *Vaughn* Nos. 501-513 appears to be accurately characterized by the Corps as a "similar" plan to the one that was released.

- The draft public communication materials are a draft news release, draft webpage content, and draft social media messages described at *Vaughn* Nos. 24-26; 54-55; and 540-542.

- The draft letters are eight draft letters (and/or emailed summaries thereof) addressed to parties with an interest in the Corps' decision that were never finalized or sent, and are described at Vaughn Nos. 35-36; 37-38; 56; 133; 134; 135; 147; and 223-224.

- The draft versions of the never-finalized memorandum are the fourteen documents described at *Vaughn* Nos. 84-95; 96-101; 102-114; 121-132; 134; 135-147; 156-166; 167-178; 179-190; 226-236; 237-248; 249-260; 261-272; and 435-454.

- The internal Corps briefing materials are the six documents or collections of documents described at *Vaughn* Nos. 370-371; 417; 418-420; 425-430; 432-434; and 457; 460-463;

---

610, 612-619, or 621-626.

465-466; 468-471; and 473-475.

It is the Corps' position that, pursuant to FOIA Exemption 5, all of the withheld and redacted documents are subject to the "deliberative-process" privilege (*see infra*), and that some of the withheld and/or redacted documents are additionally subject to the lawyer-client privilege and/or the work-product doctrine. CRK challenges each of the Corps' assertions of the lawyer-client privilege or the work-product doctrine in each of the disputed documents, and challenges the Corps' assertions of the deliberative-process privilege in any of the draft communications plans, draft public communication materials, and draft letters. CRK does not challenge the Corps' assertion of the deliberative-process privilege in the draft memoranda or briefing materials, but does challenge the Corps' contention that none of those materials contain non-privileged information that can reasonably be segregated from the privileged content.

## ANALYSIS

"The statute known as the [Freedom of Information Act] is actually a part of the Administrative Procedure Act (APA)." *United States DOJ v. Reporters Comm. for Freedom of Press* ("*RCFP*"), 489 U.S. 749, 754 (1989). In 1966 Congress amended Section 3 of the APA (thenceforth commonly referred to as the FOIA) "to implement 'a general philosophy of full agency disclosure.'" *Id.*, *quoting Department of Air Force v. Rose*, 425 U.S. 352, 360 (1976). FOIA, 5 U.S.C. § 552, "requires every [federal executive-branch] agency 'upon any request for records which reasonably describes such records' to make such records 'promptly available to any person.'" *Id.* at 754-755 (internal ellipsis omitted), *quoting* 5 U. S. C. § 552(a)(3).

> If an agency improperly withholds any documents [responsive to a person's FOIA request], the district court[s] ha[ve] jurisdiction to order their production. Unlike the review of other agency action that must be upheld if supported by substantial

> evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'

*Id.* at 755, *quoting* 5 U.S.C. § 552(a)(4)(B).

Congress specifically exempted nine categories of documents from FOIA's disclosure requirements. *See* 5 U.S.C. § 552(b). Agencies may only withhold documents responsive to a FOIA request from production if they fall into one of those nine categories. *See id.*; *see also, e.g.*, *Carter v. United States DOC*, 307 F.3d 1084, 1088 (9th Cir. 2002). Moreover, "[b]ecause FOIA's purpose is to encourage disclosure, its exemptions are to be narrowly construed." *Carter*, 307 F.3d at 1088 , *citing Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988). "The government bears the burden of proving that a requested document is exempted." *Id.*, *citing* 5 U.S.C. § 552(a)(4)(B).

The only statutory exemption from FOIA's disclosure requirements at issue here is so called "Exemption 5," codified at 5 U.S.C. § 552(b)(5). Section 552(b)(5) exempts from FOIA disclosure only "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), shielding from public scrutiny "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Notwithstanding the foregoing, in addition to the standard civil discovery exemptions from production, Exemption 5 compasses also "a 'deliberative process' privilege." *Carter*, 307 F.3d at 1088, *quoting Dep't of the Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001). "Thus, Exemption 5 covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are

Page 7 - OPINION AND ORDER

formulated.'" *Id.* at 1089, *quoting Klamath*, 532 U.S. at 8.  As noted above, the privileges the

Corps invokes here in connection with its reliance on Exemption 5 are the deliberative process

privilege, the lawyer-client privilege, and the work-product doctrine.

"To fall within the deliberative process privilege, a document must be both 'predecisional'

and 'deliberative.'" *Carter*, 307 F.3d at 1089, *quoting Assembly of California v. United States*

*Department of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).  ""A 'predecisional' document is

one 'prepared in order to assist an agency decisionmaker in arriving at his [or her] decision,' and

may include 'recommendations, draft documents, proposals, suggestions, and other subjective

documents which reflect the personal opinions of the writer rather than the policy of the agency.'"

*Id.*, *quoting Assembly*, 968 F.2d at 920.  "Material which predates a decision chronologically, but

did not contribute to that decision, is not predecisional in any meaningful sense." *Id.*, *quoting*

*Assembly*, 968 F.2d at 921.  "A predecisional document is ['deliberative'] if 'the disclosure of the

materials would expose an agency's decisionmaking process in such a way as to discourage

candid discussion within the agency and thereby undermine the agency's ability to perform its

functions.'" *Id.* (internal modifications omitted), *quoting Assembly*, 968 F.2d at 920; *see also id.*

at 1089-1092.

"The attorney-client privilege protects confidential disclosures made by a client to an

attorney in order to obtain legal advice, as well as an attorney's advice in response to such

disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal ellipsis

omitted), *quoting United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997).  "The fact that a

person is a lawyer does not make all communications with that person privileged." *Id.*, *quoting*

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).  Moreover, "[b]ecause it impedes full

and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.*, *quoting Martin*, 278 F.3d at 999.

Among the courts of the Ninth Circuit, "[a]n eight-part test determines whether information is covered by the attorney-client privilege":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010), *quoting Ruehle*, 583 F.3d at 607. "The party asserting the privilege bears the burden of proving each essential element" of the eight-part test. *Id.*, *quoting Ruehle*, 583 F.3d at 608.

Finally, the work-product doctrine is codified at Federal Civil Procedure Rule 26(b)(3). According to the provisions of Rule 26(b)(3), "a party may not [ordinarily] discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). To the contrary, such tangible attorney work product is discoverable only if relevant to a claim or defense asserted by one of the parties to an action and if the propounding party is able to show that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* Indeed, even where such tangible attorney work product may be otherwise discoverable, the courts must nevertheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), except where such "mental impressions are at issue in

a case and the need for the material is compelling," *see Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

> To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative. . . . In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. . . . Dual purpose documents are deemed prepared because of litigation if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. . . . In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.

*United States v. Richey*, 632 F.3d 559, 567-568 (9th Cir. 2011) (internal quotation marks, citations omitted). "The burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005), *quoting Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002).

By and through its FOIA request, CRK seeks documents relating to the Corps' decision to prepare an EA rather than proceed directly to preparation of an EIS in connection with the Morrow Pacific Project. The Corps' decision to prepare an EA rather than an EIS was governed by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* When a proposed federal governmental action will significantly affect the quality of the human environment, under NEPA that agency must prepare an Environmental Impact Statement detailing the environmental impact of the proposed action, any adverse environmental consequences of the proposed action that would be unavoidable if the action were undertaken, alternatives to the proposed action, the

relationship between the proposed short-term uses of the environment and the maintenance and

enhancement of long-term productivity, and any irreversible commitments of resources that the

proposed action would entail. *See* 42 U.S.C. § 4332(c); *see also* 40 C.F.R. § 1502.1; *Jones v.*

*Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 997 (9th Cir. 2013). A federal agency may

determine in its own discretion that a proposed action will have significant environmental

consequences, triggering the need for an EIS, or it may prepare an Environmental Assessment to

assist it in determining whether an EIS is necessary in connection with the proposed action. *See*

40 C.F.R. § 1501.3; *see also Jones*, 741 F.3d at 997. Accordingly, an EA is a "concise public

document" that "briefly provides sufficient evidence and analysis for determining whether to

prepare an EIS." *Jones*, 741 F.3d at 997 (internal modification omitted), *quoting* 40 C.F.R. §

1508.9(a). Where an EA mandates the conclusion that the proposed action will have no

significant impact on the human environment, the agency must issue a "Finding of No Significant

Impact" ("FONSI"), but where it is clear that the action will have such an impact or where the

effects of the action on the environment are "highly uncertain or involve unique or unknown

risks," the agency must issue an EIS. *Id.*, *quoting* 40 C.F.R. §§ 1501.4(e), 1508.13,

1508.27(b)(5).

As noted above, CRK does not challenge the Corps' assertion of the deliberative-process

privilege in the disputed draft memoranda or internal Corps briefing materials described above,

but rather challenges only the Corps' assertion that these documents contain no reasonably

segregable information. In connection with the question of segregability, FOIA provides that:

> Any reasonably segregable portion of a record shall be provided to any person
> requesting such record after deletion of the portions which are exempt . . . . The
> amount of information deleted, and the exemption under which the deletion is

made, shall be indicated on the released portion of the record, unless including
that indication would harm an interest protected by the exemption . . . under
which the deletion is made.  If technically feasible, the amount of the information
deleted, and the exemption under which the deletion is made, shall be indicated at
the place in the record where such deletion is made.

5 U.S.C. § 552(b).  Under applicable Ninth Circuit jurisprudence, such segregation must be

effected at a sentence-by-sentence level of granularity, such that "mundane" sentences contained

within a document partially subject to the deliberative-process privilege must be produced, while

sentences containing information that is both predecisional and deliberative may be redacted

from production.  *See Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 697 (9th Cir. 2012),

*citing* 5 U.S.C. § 552(b).

I address the operative question whether the Corps has met its burden to establish the

applicability of the privileges it has asserted in connection with each of the five categories of

withheld documents in turn below.

**I.       Draft Communications Plans**

As noted above, the draft communications plans production of which is in dispute are

those documents described at *Vaughn* Nos. 7-11; 18-21; 45-52; 75-79; 116-120; 149-155; 191-

200; 201-210; 212-218; 219-220; 274-280; 307-314; 375-382; 384-390; 501-513; 537-538; 543-

553; 553-557; 561-574; 576-583; 585-592; 603-610; 612-619; and 621-626.[3]  It is the Corps'

position that all of these documents are subject to the deliberative-process privilege, and each of

these documents has been withheld from production in its entirety.  In support of that position,

the Corps argues that each of the draft communications plans was "predecisional" in that each

---

[3]  As noted above, of these documents those bearing *Vaughn* Nos. 18-21, 149-155,
212-218, 307-314, 384-390, 554-557, 603-610, 612-619, or 621-626 have not been submitted for
*in camera* review by the court.

"pertains to the agency's NEPA evaluation, which is an ongoing process until the analysis is completed." The Corps further argues that the contents of the plans are "deliberative" in that they were drafts prepared for supervisory review containing "preliminary ideas on the agency's key messages/talking points and potential responses to media inquiries concerning NEPA legal and policy issues." As noted above, the Corps produced the final version of a communications plan to CRK on September 18, 2012.

The Corps cannot meet its burden to establish applicability of the deliberative-process privilege by asserting that the documents merely "pertain[]" to the agency's NEPA evaluation. A document is only subject to the deliberative-process privilege where it is both predecisional and deliberative. *See Carter*, 307 F.3d at 1089 (citations omitted). For purposes of the deliberative-process privilege, a document is only "predecisional" where it is prepared for the purpose of assisting an agency decisionmaker in reaching a decision, or otherwise contributes in some meaningful sense to the process of arriving at such a decision. *See id.* (citations omitted). The Corps provides no information to suggest that the draft communications plans were prepared for the purpose of assisting it in reaching (or otherwise contributed to) its ultimate decision at the anticipated conclusion of the EA process, its decision to prepare an EA rather than proceed directly to preparation of an EIS, or any other cognizable agency decision. This failure is sufficient to defeat the Corps' assertion of the deliberative-process privilege in these documents, but I note in further support of that conclusion that *in camera* review of the documents within this category that have been provided to the court does not suggest that any of the draft communications plans were predecisional in any meaningful sense, but rather establishes that these documents were prepared for the purpose of facilitating the dissemination and publicization

of what, at the time of their drafting, appeared to be the overwhelmingly likely conclusion of the Corps' Morrow Pacific Project EA. I therefore find that none of the draft communications plans bearing the *Vaughn* numbers set forth above is subject to the deliberative-process privilege.

Although the Corps does not address the fact anywhere in its briefing either in support of its own motion for summary judgment or in opposition to CRK's cross-motion, in addition to the deliberative-process privilege the Corps has asserted the lawyer-client privilege in the documents bearing *Vaughn* Nos. 18-21, 116-120, 149-155, 191-200, 201-210, 212-218, 219-220, 307-314, 375-382, 384-390, 501-513, 537-538, 554-557, 561-574, 603-610, 612-619, and 621-626, asserting in each case that the draft plan at issue "was provided to agency attorneys in confidence seeking their legal review and advice, in their capacity as legal advisors to the agency, and was not disclosed to parties outside the agency." In each case, the draft plan was also provided by the same email message to other, non-attorney personnel of the Corps. In no case does the Corps offer any allegation of fact to support or underlie its conclusory position that each document was communicated to an attorney for the purpose of seeking legal review and advice. Moreover, *in camera* review of the documents uncovers no suggestion that any of the documents were communicated in connection with any express or clearly implied request for legal advice or with the provision thereof. In consequence, the Corps has failed to meet its burden to establish the essential elements of the lawyer-client privilege in connection with any of the draft communications plans.

## II.    Draft Public Communication Materials

As noted above, the draft public communication materials production of which is in dispute are those documents described at *Vaughn* Nos. 24-26, 54-55, and 540-542. These

documents have all been produced to CRK in redacted form only.  It is the Corps' position that each of these documents is subject to the deliberative-process privilege, and that the documents described at *Vaughn* Nos. 24-26 and 54-55 are additionally subject to the lawyer-client privilege.

As to the deliberative-process privilege, the Corps argues that the draft communications materials were "predecisional" in that they "pertain[] to the agency's NEPA evaluation, which is an ongoing process until the analysis is completed. . . . "  The Corps further argues that the contents of the plans are "deliberative" in that they constitute drafts reflecting preliminary positions on NEPA policy issues, "which reflect the opinions of the author[s]."

As in connection with the draft communications plans discussed above, the Corps' assertion that these documents "pertain[]" to the Corps' NEPA decision is inadequate to carry its burden to establish that these documents are "predecisional" for purposes of the deliberative-process privilege.  The Corps does not provide information tending to suggest that these documents were or could have been prepared to assist in agency decisionmaking or otherwise contributed to any cognizable agency decision.  Moreover, *in camera* review establishes that, as in connection with the draft communications plans, these documents were created for the purpose of disseminating and publicizing a potential agency decision rather than for any meaningfully predecisional purpose.  In consequence, the Corps may not properly withhold these documents from production on the basis of the deliberative-process privilege.

As to the lawyer-client privilege, the Corps argues that the draft public communication materials bearing *Vaughn* Nos. 24-26 and 54-55 are subject to the lawyer-client privilege in that each "was provided to agency attorneys [as well as other, non-attorney Corps personnel] in confidence seeking their legal review and advice, in their capacity as legal advisors to the agency,

and was not disclosed to parties outside the agency." As in connection with the draft

communications plans discussed above, the Corps' conclusory assertion that the documents are

subject to the privilege is not sufficient to permit the court to determine whether the privilege has

been properly asserted, and for that reason is insufficient to satisfy the Corps' burden. Also as in

connection with the draft communications plans, *in camera* review of the documents uncovers no

suggestion that any of the documents were communicated in connection with any express or

clearly implied request for legal advice or with the provision thereof. In consequence, the Corps

has failed to meet its burden to establish the essential elements of the lawyer-client privilege in

connection with any of the draft public communication materials.

## III.    Draft Letters

As noted above, the draft letters production of which is in dispute are those documents

described at *Vaughn* Nos. 35-36, 37-38, 56, 133, 134, 135, 147, and 223-224. The Corps

withheld all of these documents from production in whole or in part on the basis of the

deliberative-process privilege, and in case of *Vaughn* Nos. 56 and 223-224, on the additional

basis of the lawyer-client privilege.

As to the deliberative-process privilege, the Corps argues that the draft letters were

"predecisional" in that they "pertain[] to the agency's NEPA evaluation, which is an ongoing

process until the analysis is completed. . . . " The Corps further argues that the draft letters (and

any email summaries thereof) were "deliberative" in that they contain "advice and

recommendations . . . concerning the NEPA evaluation of the proposal."

As in connection with the draft communications plans and draft public communication

materials discussed above, the Corps' assertion that these documents "pertain[]" to the Corps'

NEPA decision is inadequate to carry its burden to establish that these documents are "predecisional" for purposes of the deliberative-process privilege. The Corps again does not provide information tending to suggest that these documents were or could have been prepared to assist in agency decisionmaking or otherwise contributed to any cognizable agency decision. Moreover, *in camera* review again establishes that, as in connection with the draft communications plan and draft public communication materials, these documents were created for the purpose of disseminating and publicizing a potential agency decision rather than for any meaningfully predecisional purpose. In consequence, the Corps may not withhold these documents from production on the basis of the deliberative-process privilege.

As to the lawyer-client privilege, the Corps argues that the draft letters bearing *Vaughn* Nos. 56 and 224 and the nearly content-free email cover message bearing *Vaughn* No. 223 are subject to the lawyer-client privilege in that each was purportedly provided in confidence to attorneys for the purpose of seeking legal advice. As in connection with the draft communications plans and draft public communication materials discussed above, the Corps' conclusory assertion that the documents are subject to the privilege is not sufficient to permit the court to determine whether the privilege has been properly asserted, and for that reason is insufficient to satisfy the Corps' burden. Also as in connection with the draft communications plans, *in camera* review of the documents uncovers no suggestion that either of the documents was communicated in connection with any express or clearly implied request for legal advice or with the provision thereof. In consequence, the Corps has failed to meet its burden to establish the essential elements of the lawyer-client privilege in connection with any of the draft letters.

## IV.    Draft Memoranda

As noted above, the draft memoranda are the fourteen documents described at *Vaughn* Nos. 84-95; 96-101; 102-114; 121-132; 134; 135-147; 156-166; 167-178; 179-190; 226-236; 237-248; 249-260; 261-272; and 435-454. These documents have all been withheld in their entirety on the basis of the deliberative-process privilege, in case of *Vaughn* Nos. 84, 96-101, 102-103, 156-166, 167-178, 226-236, 237-248, 249-260, and 261-272 on the additional basis of the lawyer-client privilege, and in case of *Vaughn* Nos. 84-95, 96-101, 102-114, 121-132, 136-146, 156-166, 167-178, 179-190, 226-236, 238-248, 250-260, 262-272, and 435-454 on the additional basis of the work-product doctrine. The Corps takes the position that the draft versions of the memorandum contain no reasonably segregable material. While CRK challenges the Corps' assertion of the lawyer-client privilege and work-product doctrine in any of these documents, it does not challenge the Corps' assertion of the deliberative-process privilege in any of them. Instead, CRK challenges the Corps' position that the memoranda contain no reasonably segregable information.

As to the lawyer-client privilege asserted in *Vaughn* Nos. 84, 96-101, 102-103, 156-166, 167-178, 226-236, 237-248, 249-260, and 261-272, the Corps argues that some of the draft versions of the memorandum, and many of the email cover messages transmitting some of the draft versions, are subject to the privilege in that they "contain[] a summary of attorney-client privileged legal advice which was provided by agency attorneys, in confidence, in the attorney's capacity as a legal advisor to the agency, and was not disclosed to parties outside the agency" and/or were "provided to agency attorneys in confidence seeking their legal review and advice, in their capacity as legal advisors to the agency, and was not disclosed to parties outside the

Page 18 - OPINION AND ORDER

agency." I agree with the Corps that the client's confidential internal dissemination of attorney-provided confidential legal advice remains privileged to the same extent as the originally provided advice. *In camera* review of the documents purportedly containing such advice establishes that the Corps was entitled, pursuant to the lawyer-client privilege, to withhold from production the documents bearing *Vaughn* Nos. 102-103. However, the Corps' conclusory assertion that the privilege inheres in the remainder of the documents as requests for and/or provision of confidential legal advice is insufficient to satisfy the Corps' burden with respect to the lawyer-client privilege in the remainder of the documents, and *in camera* review uncovers no suggestion that any of the remaining documents at issue was communicated in connection with any express or clearly implied request for legal advice or with the provision thereof. In consequence, the Corps has failed to meet its burden to establish the essential elements of the lawyer-client privilege in connection with any of the draft memoranda or associated email messages other than as to *Vaughn* Nos. 102-103.

As to the work-product doctrine asserted in *Vaughn* Nos. 84-95, 96-101, 102-114, 121-132, 136-146, 156-166, 167-178, 179-190, 226-236, 238-248, 250-260, 262-272, and 435-454, the Corps offers the conclusory assertion that each such document was prepared by an attorney in anticipation of reasonably foreseeable litigation. The parties' assertions regarding these documents tend to establish that the draft versions of the memorandum were prepared in connection with the Corps' NEPA deliberations rather than in connection with litigation that might ensue in consequence thereof, and that they would have been prepared even in the absence of any likelihood that the NEPA decision would lead to litigation. *In camera* review of the documents and their transmittal messages does not suggest to the contrary. Because the

Page 19 - OPINION AND ORDER

documents were not created in preparation for trial or litigation (notwithstanding the Corps'
awareness that litigation may have been a likely prospect), and because they would have been
created in substantially the same form absent any likelihood of litigation, the Corps may not
properly withhold any of the draft memoranda from production on the basis of the work-product
doctrine.

As to the question of segregability, *in camera* review establishes that each draft version of
the memorandum contains numerous "mundane" sentences not subject to the deliberative-process
privilege. The Corps is required under the Ninth Circuit jurisprudence discussed above to
produce segregable non-privileged statements contained within the draft memoranda in response
to CRK's FOIA request.

## V.    Briefing Materials

As noted above, the internal Corps briefing materials at issue are the six documents or
collections of documents described at *Vaughn* Nos. 370-371; 417; 418-420; 425-430; 432-434;
and 457; 460-463; 465-466; 468-471; and 473-475. These documents have all been withheld in
their entirety on the basis of the deliberative-process privilege and, in case of *Vaughn* Nos. 370-
371, the lawyer-client privilege. The Corps takes the position that the briefing materials contain
no reasonably segregable material. While CRK challenges the Corps' assertion of the lawyer-
client privilege in *Vaughn* Nos. 370-371, it does not challenge the Corps' assertion of the
deliberative-process privilege in any of these documents. Instead, CRK challenges the Corps'
position that the briefing materials contain no reasonably segregable information.

As to the lawyer-client privilege, the Corps argues that the email cover message and
PowerPoint slide bearing *Vaughn* Nos. 370-371 are subject to the lawyer-client privilege in that

Page 20 - OPINION AND ORDER

they were "provided to agency attorneys [among other, non-attorney Corps personnel] in confidence seeking their legal review and advice, in their capacity as legal advisors to the agency, and w[ere] not disclosed to parties outside the agency." This conclusory assertion is insufficient to permit the court to determine whether the privilege is properly asserted in this document, and *in camera* review of the document uncovers no suggestion that it was communicated in connection with any express or clearly implied request for legal advice or with the provision thereof. In consequence, the Corps has failed to meet its burden to establish the essential elements of the lawyer-client privilege in connection with this document.

As to the question of segregability, *in camera* review establishes that the briefing materials contain numerous "mundane" sentences not subject to the deliberative-process privilege. The Corps is required under the Ninth Circuit jurisprudence discussed above to produce segregable non-privileged statements contained within the briefing materials in response to CRK's FOIA request.

## CONCLUSION

For the reasons set forth above, the Corps' motion (#27) for summary judgment is granted as to the Corps' decision to withhold from production in response to CRK's FOIA request the document bearing *Vaughn* Nos. 102-103 and is otherwise denied, and CRK's cross-motion (#32) for summary judgment is denied as to that same document and is otherwise granted. The Corps is directed to produce to CRK all reasonably segregable information contained in the draft memoranda (other than the document bearing *Vaughn* Nos. 102-103) and briefing materials at

/ / /

/ / /

Page 21 - OPINION AND ORDER

issue herein, in a manner consistent with the discussion above.  A final judgment will be prepared.

Dated this 14th day of August, 2014.

Honorable Paul Papak
United States Magistrate Judge